Kevin T. Snider, CA State Bar No. 170988
*Counsel of Record*
Matthew B. McReynolds, CA State Bar No. 234797
PACIFIC JUSTICE INSTITUTE
P.O. Box 276600
Sacramento, CA 95827
Tel. (916) 857-6900
Email: ksnider@pji.org; mmcreynolds@pji.org

Emily C. Mimnaugh, NV State Bar No. 15287 *pro hac vice*
PACIFIC JUSTICE INSTITUTE
1580 Grand Point Way #33171
Reno, NV 89533
Tel.  (916) 857-6900
Email: emimnaugh@pji.org

Ronn Bisbee, CA State Bar No. 207071
BISBEE LAW GROUP
24040 Camino del Avion, Suite E-109
Monarch Beach, CA 92629
Tel. (949) 481-9664
Email: info@bisbeelawgroup.com

*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE GUARDADO, MELISSA BORZONI, ANDREW MALONEY, ROMMEL TAYLOR, PENNI EIGSTER, TARA AMADO, and DANIELLE BOLOGNA on behalf of themselves and all other similarly situated persons,<br><br>        Plaintiffs,<br><br>v. | Case No.:<br><br>**COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF**<br><br>CLASS ACTION |

COMPLAINT
1

CITY AND COUNTY OF SAN                )
FRANCISCO, and DOES 1-100,            )
                                      )
         Defendants.                  )

## **INTRODUCTION**

1.    This is a complaint for employment discrimination brought as a class action by employees holding religious convictions against the SARS-CoV-2 (COVID-19) vaccine. Casting aside the presumption of sincerity of faith, a government employer has zealously hunted for heretics and hypocrites among its workforce.  Of the approximately 1,000 employees seeking a religious accommodation, only a small fraction were deemed true believers.

2.    The City and County of San Francisco (San Francisco) ordered all of its employees to submit to vaccination for COVID-19.  Pursuant to federal and state law, San Francisco as an employer must allow employees to submit requests for religious accommodation when compliance with a work requirement would violate religious beliefs.  Absent an actual undue hardship on San Francisco, the requests for accommodation must be granted.  Approximately 1,000 employees submitted requests for religious accommodation.  But while these employees acted in good faith, San Francisco did not.  Instead, San Francisco conducted a religious inquisition to determine which employees were true believers.  According to San Francisco, only 51 employees requesting religious accommodation hold a sincere faith; for those who survived its religious wringer, the "accommodation" provided was placement on a 60-day citywide job search.  What is more, San Francisco claims that accommodation constitutes an undue hardship because an unvaccinated employee poses a danger to themselves, co-workers, and the public.  As a result, nearly all 1,000 religious objectors have either been fired or are in the process of San Francisco terminating their employment.

**JURISDICTION AND VENUE**

3.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, as it arises under the Constitution and laws of the United States, and presents a federal question, pursuant to 28 U.S.C. § 1343(a)(3)-(4).  The Court also has jurisdiction under 42 U.S.C. § 2000-e5(f)(3).  Venue is proper within this judicial district and division, pursuant to 28 U.S.C. § 1391(b), because the relevant events have occurred and are threated to occur in this jurisdictional district and division. The Defendant's principal place of business is in this district.

4.     Plaintiffs' claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201-02, Federal Rules of Civil Procedure 57 and 65, and the general legal and equitable powers of this Court, which empower this Court to grant the requested relief.

**PARTIES**

**Plaintiffs**

5.     Plaintiff, JOSE GUARDADO, was employed by the CITY AND COUNTY OF SAN FRANCISCO as an Architectural Associate II.  GUARDADO has sincerely held religious beliefs that prevent him from receiving the COVID-19 vaccine without violating his faith.  GUARDADO submitted a written request for a religious accommodation under Title VII and the California Fair Employment and Housing Act.  GUARDADO utilized San Francisco's form entitled *Employee Request for Religious Accommodation (COVID-19 Exemption)*.  A true and correct copy of his request, along with the combined requests of the other Plaintiffs, accompanies this Complaint, is incorporated in full, and marked as Exhibit 1.  His beliefs are sincerely held.  San Francisco deemed his claim of faith to be insincere and denied his request for a religious accommodation via its standardized form entitled *Reasonable Accommodation Determination (COVID-19 Vaccination Exemption)*.  On the form, the box **DENIED** was checked.  A true and correct copy

of the denial, combined with those of the other Plaintiffs, accompanies this Complaint, is incorporated in full, and marked as Exhibit 2.  In addition, San Francisco speculated that an accommodation would be an undue hardship based on the claim that an unvaccinated employee presents a danger to himself, co-workers, and the public, although fully vaccinated employees continued to contract and spread COVID-19.   GUARDADO was thus fired.  GUARDADO has exhausted administrative remedies and has received a notice of right to sue from the Equal Employment Opportunity Commission (EEOC).  A true and correct copy of the notice from the EEOC right to sue letter, along with those of the other Plaintiffs, accompanies this Complaint, is incorporated in full, and marked as Exhibit 3. GUARDADO sues on behalf of himself and on behalf of others similarly situated. GUARDADO is the Plaintiff Class representative.

6.      Plaintiff, MELISSA BORZONI, was employed by the CITY AND COUNTY OF SAN FRANCISCO as a Senior Community Development Specialist I.  BORZONI has sincerely held religious beliefs that prevent her from receiving the COVID-19 vaccine without violating her faith.  BORZONI submitted a written request for a religious accommodation under Title VII and the California Fair Employment and Housing Act.  *See* Exhibit 1.  Her beliefs are sincerely held.  San Francisco denied her request for a religious accommodation.  *See* Exhibit 2.  In addition, San Francisco speculated that an accommodation would be an undue hardship based on the claim that an unvaccinated employee presents a danger to herself, co-workers, and the public, although fully vaccinated employees continued to contract and spread COVID-19. BORZONI was thus fired.  BORZONI has exhausted administrative remedies and has received a notice of right to sue from the EEOC.  *See* Exhibit 3.  BORZONI sues on behalf of herself and on behalf of others similarly situated.  BORZONI is a first alternate Plaintiff Class representative.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

7.      Plaintiff, ANDREW MALONEY, was employed by the CITY AND COUNTY OF SAN FRANCISCO as an Architect.  MALONEY has sincerely held religious beliefs that prevent him from receiving the COVID-19 vaccine without violating his faith.  MALONEY submitted a written request for a religious accommodation under Title VII and the California Fair Employment and Housing Act.  *See* Exhibit 1.  His beliefs are sincerely held.  San Francisco denied his request for a religious accommodation.  *See* Exhibit 2.  In addition, San Francisco speculated that an accommodation would be an undue hardship based on the claim that an unvaccinated employee presents a danger to himself, co-workers, and the public, although fully vaccinated employees continued to contract and spread COVID-19.  MALONEY was thus fired.  MALONEY has exhausted administrative remedies and has received a notice of right to sue from the EEOC. *See* Exhibit 3.  MALONEY sues on behalf of himself and on behalf of others similarly situated.  MALONEY is a second alternate Plaintiff Class representative.

8.      Plaintiff, ROMMEL TAYLOR, was employed by the CITY AND COUNTY OF SAN FRANCISCO as a Senior Community Development Specialist II.  TAYLOR has sincerely held religious beliefs that prevent him from receiving the COVID-19 vaccine without violating his faith.  TAYLOR submitted a written request for a religious accommodation under Title VII and the California Fair Employment and Housing Act.  *See* Exhibit 1.  His beliefs are sincerely held.  San Francisco deemed his claim of faith to be insincere and denied his request for a religious accommodation.  *See* Exhibit 2.  In addition, San Francisco speculated that an accommodation would be an undue hardship based on the claim that an unvaccinated employee presents a danger to himself, co-workers, and the public, although fully vaccinated employees continued to contract and spread COVID-19.  TAYLOR was thus fired.  TAYLOR has exhausted administrative remedies and has received a notice of right to sue from the EEOC.  *See* Exhibit 3.  TAYLOR

sues on behalf of himself and on behalf of others similarly situated.  TAYLOR is a third alternate Plaintiff Class representative.

9.      Plaintiff, PENNI EIGSTER, was employed by the CITY AND COUNTY OF SAN FRANCISCO as a Manager I.  EIGSTER has sincerely held religious beliefs that prevent her from receiving the COVID-19 vaccine without violating her faith.  EIGSTER submitted a written request for a religious accommodation under Title VII and the California Fair Employment and Housing Act.  *See* Exhibit 1.  Her beliefs are sincerely held.  San Francisco deemed her claim of faith to be insincere and denied her request for a religious accommodation.  *See* Exhibit 2.  In addition, San Francisco speculated that an accommodation would be an undue hardship based on the claim that an unvaccinated employee presents a danger to herself, co-workers, and the public, although fully vaccinated employees continued to contract and spread COVID-19. EIGSTER was thus fired.  EIGSTER has exhausted administrative remedies and has received a notice of right to from the EEOC.  *See* Exhibit 3.  EIGSTER sues on behalf of herself, and on behalf of others similarly situated.  EIGSTER is a fourth alternate Plaintiff Class representative.

10.      Plaintiff, TARA AMADO, was employed by the CITY AND COUNTY OF SAN FRANCISCO as a Transit Operator.  AMADO has sincerely held religious beliefs that prevent her from receiving the COVID-19 vaccine without violating her faith.  AMADO submitted a written request for a religious accommodation under Title VII and the California Fair Employment and Housing Act.  *See* Exhibit 1.  Her beliefs are sincerely held.  San Francisco denied her request for a religious accommodation.  *See* Exhibit 2.  In addition, San Francisco speculated that an accommodation would be an undue hardship based on the claim that an unvaccinated employee presents a danger to herself, co-workers, and the public, although fully vaccinated employees continued to contract and spread

COVID-19. AMADO was thus fired.  AMADO has exhausted administrative remedies and has received a notice of right to from the EEOC.  *See* Exhibit 3. AMADO sues on behalf of herself, and on behalf of others similarly situated. AMADO is a fifth alternate Plaintiff Class representative.

11.     Plaintiff, DANIELLE BOLOGNA, was employed by the CITY AND COUNTY OF SAN FRANCISCO as a Public Service Aid – Associate to Professionals.  BOLOGNA has sincerely held religious beliefs that prevent her from receiving the COVID-19 vaccine without violating her faith.  BOLOGNA submitted a written request for a religious accommodation under Title VII and the California Fair Employment and Housing Act.  *See* Exhibit 1.  Her beliefs are sincerely held.  San Francisco deemed her claim of faith to be insincere and denied her request for a religious accommodation.  *See* Exhibit 2.  In addition, San Francisco speculated that an accommodation would be an undue hardship based on the claim that an unvaccinated employee presents a danger to herself, co-workers, and the public, although fully vaccinated employees continued to contract and spread COVID-19. BOLOGNA was thus fired.  BOLOGNA has exhausted administrative remedies and has received a notice of right to from the EEOC.  *See* Exhibit 3.  BOLOGNA sues on behalf of herself, and on behalf of others similarly situated.  BOLOGNA is a sixth alternate Plaintiff Class representative.

**Defendants**

12.     Defendant, CITY AND COUNTY OF SAN FRANCISCO, is established as a consolidated charter county and city pursuant to the California Constitution art. XI, § 6.  It is an *employer* as defined by 42 U.S.C. § 2000e(b) and Cal. Gov. Code § 12926(d) and employs or has employed the named Plaintiffs in the above-captioned case as well as members of the Plaintiff Class.

13.     The true names and capacities, whether individual, corporate, associate, or otherwise, of DOES 1-100, inclusive, are unknown to Plaintiffs at this

time, who therefore sues said Defendants by such fictitious names.  Plaintiffs are informed and believe and thereon allege that each of the fictitiously named Defendants is in some way responsible for, or participated in or contributed to, the matters and things complained of herein, and is legally responsible in some manner.  Plaintiffs will seek leave to amend this Complaint when the true names, capacities, and responsibilities have been ascertained.

## CLASS ACTION ALLEGATIONS

14.    Plaintiffs, JOSE GUARDADO, MELISSA BORZONI, ANDREW MALONEY, ROMMEL TAYLOR, PENNI EIGSTER, TARA AMADO and DANIELLE BOLOGNA (each a Plaintiff and, together, the named Plaintiffs), bring this action for a class of persons defined as follows: All employees presently or previously employed by San Francisco (1) who have been ordered to submit to a COVID-19 vaccination, (2) who have submitted a written request for a religious accommodation, and (3) whose requests were denied due to a finding of a lack of religious sincerity and/or due to the claim that granting a religious accommodation would pose an undue hardship on San Francisco.

15.    These persons are collectively referred to as the Plaintiff Class.

16.    The proposed Plaintiff Class satisfies the numerosity, commonality, typicality, and adequacy prerequisites for suing as a representative party under Rule 23 of the Federal Rules of Civil Procedure.

A. **Numerosity**: The proposed Plaintiff Class is comprised of approximately 1,000 current or former employees of San Francisco.

B. **Commonality**: There are questions of law and fact common to each member of the proposed Plaintiff Class, to wit:

(1)  Whether the universal denial of *religious* accommodation to the unvaccinated based on the claim that the unvaccinated employee poses a danger to the employee, co-workers, and the

public is lawful under federal and state employment laws when the employer simultaneously allows *secular* accommodations for the unvaccinated;

(2) Whether San Francisco's standardized process of inquiring into the sincerity of the faith of any employee who requests religious accommodation is consistent with federal employment laws, including Title VII of the Civil Rights Act of 1964—42 U.S.C. § 2000e, et seq. (Title VII), and state employment laws, including the California Fair Employment and Housing Act—Cal. Gov. Code § 12900, et seq. (FEHA); and

(3) Whether San Francisco's standardized process of inquiring into the sincerity of the faith of any employee who requests religious accommodation is consistent with the religion clauses enumerated in the First Amendment.

C. **Typicality**: The named Plaintiffs' claims are typical of the Plaintiff Class in that (1) all named Plaintiffs hold religious beliefs that compel them not to receive the COVID-19 vaccine; (2) they have claimed sincerity of their religious beliefs; (3) they have submitted written requests for religious accommodation; and (4) their requests have been denied.

D. **Adequacy of Representation**: The named Plaintiffs will fairly and adequately protect the interests of the proposed Plaintiff Class. The interests of the named Plaintiffs do not conflict with the interests of the Plaintiff Class members, and the named Plaintiffs have retained counsel experienced in successful class action litigation and constitutional litigation in order to vigorously prosecute this action

on behalf of the Plaintiff Class.  The relief sought by the named
Plaintiffs will inure to the benefit of the Plaintiff Class generally.

E.  The named Plaintiffs raise predominantly common factual and legal
questions that can be answered for all Plaintiff Class members
through a single class-wide proceeding, which will be a superior
method for adjudicating these issues for the Plaintiff Class.

## **FACTS**

17.    On June 23, 2021, San Francisco issued a COVID-19 Vaccination
Policy requiring all employees to be fully vaccinated as a condition of employment.

18.    Approximately 1,070 employees submitted requests to be exempted
from COVID-19 vaccination due to their sincerely held religious beliefs.

19.    The named Plaintiffs and the individual members of the Plaintiff Class
have each submitted a written request for a religious accommodation in order to be
exempted from COVID-19 vaccination.  Like the rest of the Plaintiff Class, they
affirmatively assert that their religious convictions against taking the COVID-19
vaccination are sincerely held.

20.    Generally, an employer should proceed on the assumption that a
request for religious accommodation is based on sincerely held religious beliefs,
practices, or observances.  San Francisco has turned this standard on its head.
Instead, San Francisco has instituted a detailed probe into the sincerity of the faith
of its employees.

21.    Through a standardized protocol, San Francisco has instituted a
detailed inquiry for each employee requesting a religious accommodation to
COVID-19 vaccination.  This is done whether or not there is an objective basis for
questioning either the religious nature or the sincerity of a particular belief.

22.    San Francisco provided a PowerPoint presentation to its Department of
Human Resources (HR) entitled *Medical & Religious Exemptions to COVID-19*

*Vaccination* (September 1, 2021).  A true and correct copy of the PowerPoint accompanies this Complaint, is incorporated in full, and marked as Exhibit 4.

23.     Under the heading *What is religion?* slide 14 reads as follows:

- No political, philosophical, scientific, sociological, ecological, charitable groups
- No conspiracy theorists
- No personal choices or fears cloaked in religion
  Although a determination of what is a "religious" belief or practice entitled to constitutional protection may present a most delicate question, the very concept of ordered liberty precludes allowing every person to make his own standards on matters of conduct in which society as a whole has important interests. *Friedman v. Southern Cal. Permanente Medical Group* (2002) 102 Cal. App. 4th 39.

24.     San Francisco's position on religious accommodation, reflected in slide 14, resulted in the denial of its employees' requests for religious accommodation.

25.     Employees are rejected by San Francisco if they merely mention non-religious views *along with* their religious views.  Some employees have religious convictions that overlap religious and political views.  Their views are not isolated teachings but part and parcel of comprehensive religious belief systems.

26.     Slide 15 directs HR personnel to "get specific belief, tenet or observance that conflicts with the vaccine requirement."  San Francisco's position regarding religious sincerity is to require narrow focus as to the COVID-19 vaccine. This position results in religious employees being deemed insincere if their convictions are based on broad theological principals.  For example, an employee might believe in the sanctity of life or that a Christian's body literally houses the Holy Ghost.  The first conviction would preclude the use of any substance that was developed through the use of aborted fetal tissue.  The second belief would prevent

an adherent from ingesting a substance they thought could harm them, thus not treating the body with the sacredness that the fleshly temple of God deserves.

27.    Slide 16 directs HR personnel to "[l]ook for factual inaccuracies in beliefs, i.e., the vaccines contain aborted fetal cells . . . the vaccine causes sterility." San Francisco's position regarding claimed "factual inaccuracies" is an inquiry outside of the issue of whether the belief is both religious and sincerely held.  A finding of claimed "factual inaccuracies" resulted in the faith of employees being wrongfully deemed as insincere.

28.    San Francisco provided employees with a declaration, to be signed under penalty of perjury, for religious leaders entitled, "Declaration in Support of Employee Religious Exemption Request (COVID-19" [*sic*] (Religious Leader Declaration).  A true and correct copy of the Religious Leader Declaration accompanies this Complaint, is incorporated in full, and marked as Exhibit 5.

29.    The Religious Leader Declaration provides in part:

> Does the religion or belief system . . . requires [*sic*] all adherents to abstain from the COVID-19 vaccination because the vaccination conflicts with the tenets, practices and observations [*sic*] of a recognized church, religious denomination, or recognized religious organization:
> __ YES __ NO   If YES, please cite the specific tenet, practice or observation [*sic*] that conflicts with the COVID-19 vaccination requirement, and/or explain how it is followed.

30.    San Francisco's use of the Religious Leader Declaration results in the denial of religious accommodation to employees because it requires (1) universal abstinence (i.e., all adherents of a particular religion, denomination, or sect) from COVID-19 vaccination, (2) a specific tenet, practice or observance that conflicts with receipt of the COVID-19 vaccine, and (3) membership in a "recognized church, denomination or organization."

31.     San Francisco's requirement of "universal abstinence" is not what Title VII and FEHA require because it assumes that an employee is insincere simply because the employee adheres to some common practices of his or her faith tradition but not others. Likewise, San Francisco penalizes the faithful by denying religious accommodations to the COVID-19 vaccination for employees whose practices deviate from the commonly followed tenets of the employee's religion. This deviation speaks only to orthodoxy – a practice which state actors cannot indulge – rather than actual sincerity.

32.     San Francisco also requires, and/or gives greater consideration to, those belonging to a recognized church, denomination, or organization.  This results in depriving employees of their constitutional and statutory religious liberties if they adhere to nontraditional religious beliefs, practices, or observances. This requirement has resulted in the unlawful denial of religious accommodation of employees.

33.     San Francisco's HR issued a document to the employees in its department who process requests for religious accommodation.  A true and correct copy of *Tips for Processing Religious Accommodation Vaccine Exemption Requests* (Issued September 1, 2021) accompanies this Complaint, is incorporated in full, and marked as Exhibit 6 (herein described as "Tips").

34.     One of the tips for HR evaluators is to "make sure the employee responds to question #4, regarding prior vaccinations and their religious beliefs." This tip regarding past vaccinations has resulted in San Francisco deeming employees who have previously been vaccinated as insincere.

35.     San Francisco asks employees seeking religious accommodations whether they have ever taken vaccines for measles, chickenpox, hepatitis A, or influenza.

36.     San Francisco asks employees seeking religious accommodations whether they have had their children take any vaccines.

37.     San Francisco asks employees seeking religious accommodations whether they have ever taken Tylenol, Pepto Bismol, Aspirin, Tums, Lipitor, Senokot, Motrin, Ibuprofen, Maalox, Ex-Lax, Benadryl, Sudafed, Albuterol, Preparation H, Claritin, Zoloft, Prilosec OTC, and Azithromycin.

38.     Tips cautions reviewers that "most recognized religions do not prohibit vaccinations.  A non-exhaustive list of religious faiths and their stance on vaccination can be found here: https://www.vumc.org/health-wellness/news-resource-articles/immunizations-and-religion."  As a result of this position of looking to whether a particular religious faith has a position on vaccination, San Francisco denied requests for religious accommodation of employees who belong to faith groups that did not broadly oppose vaccination.

39.     Tips also specifically calls into question the validity of specific religious beliefs related to the sanctity of life:

> With respect to the COVID-19 vaccine specifically, a statement that the employee is refusing the vaccine due to concerns about the use of fetal cells may not be a qualifying religious belief because neither Pfizer nor Moderna vaccines contain cells. (*See,* Los Angeles County COVID-19 Vaccine and Fetal Cell Lines http://publichealth.lacounty.gov/media/Coronavirus/docs/vaccine/VaccineDevelopment_FetalCelllines.pdf."  Ex.6, p. 2.

40.     The referenced document by Tips is from Los Angeles County and quotes the U.S. Conference of Catholic Bishops which reads, in part, "neither vaccine is completely free from any use of abortion-derived cell lines."  The Conference of Catholic Bishops goes on to state that "one may receive any of the clinically recommended vaccines in good conscience with the assurance that reception of such vaccines does not involve immoral cooperation in abortion."  Similarly, the document states that "the Catholic Church and the Southern Baptist

Ethics & Religious Liberty Commission have both stated that **receiving a COVID-19 vaccine that required fetal cell lines for production or manufacture is morally acceptable**." *Id.* (Emphasis in original).

41.    On the issue of the sanctity of life and the use of COVID-19 vaccines, San Francisco is either substituting its judgment—or that of specific religious bodies—for the sincerely held beliefs of its employees.  Moreover, the Los Angeles County document that San Francisco utilizes is a state-sponsored attempt to talk persons of faith out of their religious convictions.  This is conduct that the First Amendment's religion clauses forbid.

42.    Tips also claims that other vaccines such as hepatitis A, rubella, and rabies used fetal cell lines.  "If the employee has previously received other vaccines without concern, the claimed belief may not be religious."  Ex. 6, p. 2.  This tip presumes that the employee had knowledge of the fetal cell lines used in such vaccines.

43.    San Francisco's HR evaluators are coached in determining if there is a "reasonable objective basis for questioning their sincerity":

> The following are a few objective facts that may raise questions about whether an exemption request is based on a sincerely held belief:
> - The employee only recently adopted the stated belief, i.e., this year or since the start of the pandemic.
> - The request is accompanied by a declaration or letter from an online 'church' or pastor.
> - The employee provides vague or incomplete information about their religious beliefs.
> - The employee has previously accepted other vaccinations, and now has a different position regarding only the COVID-19 vaccination.

Ex. 6, p. 3.

44.    Employees are subjected to a regulatory religious crucible of ten questions, "to be used as needed."  Below are some of those questions:

- Please identify the specific religious tenet that prohibits COVID-19 vaccination.
- Please identify the Christian/Muslim/Jewish/etc. Sect of denomination that teaches that COVID-19 vaccination is prohibited.
- The [Vatican/insert religious authoritative or governing body][1] has endorsed the COVID-19 vaccines and pronounced that the connection between the fetal cell lines used in vaccine testing and actual abortion is sufficiently remote and the pandemic sufficiently serious to allow members to receive the vaccine in good conscience. Are your beliefs contrary to this pronouncement? If so, why?
- Please identify the specific religious tenet, practice or observance that prohibits receiving vaccines developed or tested using fetal cell lines.

Ex. 6, p. 4. The third bullet point is calculated to identify heretics.

45.    HR evaluators are told to seek information from third-party clerics regarding the employee's religious beliefs under the following circumstances:

- Employee provides vague or incomplete responses to questions about their religious beliefs or belief systems.
- Employee's religion or belief system is not well-known, or has a structure that is not like traditional religions.
- Employee statements objectively raise questions regarding whether the employee's belief is part of a religion or belief system.
- Employee actions are inconsistent with the alleged religious beliefs.

Ex. 6, p. 4. The fourth bullet point is calculated to identify hypocrites.

46.    On San Francisco's standardized form entitled *Reasonable Accommodation Determination (COVID-19 Vaccination Exemption)* a box was checked **DENIED** for members of the Plaintiff Class. See Exhibit 2.

47.    The protocol and standardized forms used by HR evaluators comprise a detailed, individualized assessment.

---

[1] Brackets appear in the original.

48.     San Francisco viewed the approximately 1,000 religious employees who sought religious accommodation as either hypocrites or heretics and thus denied their requests.

49.     A small percentage of requests for religious accommodation were found to be sincere.  That minute percentage of employees were granted an "accommodation" of placement on a 60-day citywide job search.  Since all jobs required vaccination, this search was a fool's errand.

50.     Plaintiffs believe and thereon allege that some employees who sought medical exemptions were approved by San Francisco.

51.     San Francisco denies religious accommodations as an undue hardship because it asserts that those who are unvaccinated pose a danger to themselves, coworkers, and the public.

52.     In a published statement, the federal Centers for Disease Control and Prevention (CDC) stated that Delta infection resulted in similarly high COVID-19 viral loads in vaccinated and unvaccinated people.[2]  CDC Director Rochelle Walensky has confirmed that COVID-19-positive individuals carry the same "viral load" (equivalent to the risk of spreading infection) whether they are vaccinated or unvaccinated.[3]

53.     The CDC Director's statement was based on a study in the summer of 2021 which tested vaccinated and unvaccinated persons and found: "Cycle

---

[2] Statement from CDC Director Rochelle P. Walensky issued on July 30, 2021 and available at:  https://www.cdc.gov/media/releases/2021/s0730-mmwr-covid-19.html downloaded on July 5, 2022.
[3] Id.

threshold values [(COVID-19 viral loads)] were similar among specimens from patients who were fully vaccinated and those who were not."[4]

54.    Later studies have found that the viral load associated with COVID-19 variants such as Omicron also does not vary based upon vaccination status: "[F]ully vaccinated individuals with breakthrough infections have peak viral load similar to unvaccinated cases and can efficiently transmit infection in household settings, including to fully vaccinated contacts."[5]

55.    In another official statement, the CDC has confirmed those studies and stated that it expects that anyone with an Omicron infection, regardless of vaccination status or whether or not they have symptoms, can spread the virus to others.[6]

56.    Because the viral loads are no different for the vaccinated and the unvaccinated, San Francisco's position that the unvaccinated pose a danger to themselves, coworkers, and the public, but that the vaccinated do not pose this danger, is not consistent with the above-cited statements from the CDC.

///

///

---

[4] "Outbreak of SARS-CoV-2 Infections, Including COVID-19 Vaccine Breakthrough Infections, Associated with Large Public Gatherings — Barnstable County, Massachusetts, July 2021" *Morbidity and Mortality Weekly Report, CDC* (July 30, 2021), available at: https://www.cdc.gov/mmwr/volumes/70/wr/mm7031e2.htm?s_cid=mm7031e2_w.

[5]  David W. Eyre, B.M., B.Ch., D.Phil. et al.  *Effect of Covid-19 Vaccination on Transmission of Alpha and Delta Variants*, New England J. Med 386:744-756 (February 24, 2022) available at: https://www.nejm.org/doi/full/10.1056/NEJMoa2116597 downloaded on July 6, 2022.

[6] "Omicron Variant: What You Need to Know" *CDC* (March 29, 2022) available at: https://www.cdc.gov/coronavirus/2019-ncov/variants/omicron-variant.html.

# FIRST CAUSE OF ACTION

**FAILURE TO PROVIDE RELIGIOUS ACCOMMODATION**
**Violation of Title VII of the Civil Rights Act of 1964**
All Plaintiffs Against All Government Defendants
(42 U.S.C. § 2000e)

57.     Plaintiffs repeat and reallege the allegations above and incorporate those allegations herein by reference.

58.     At all times relevant hereto, Title VII was in full force and effect and was binding on San Francisco.

59.     At all times relevant hereto, the Plaintiffs were performing competently in the positions they held as employees of San Francisco.

60.     Plaintiffs have bona fide religious beliefs that conflict with receiving the COVID-19 vaccination; they have informed their employer of such beliefs.  The Plaintiffs were disciplined for failure to comply with the conflicting employment requirement.

61.     Title VII makes it an unlawful employment practice to fail or refuse to reasonably accommodate the religious beliefs and practices of an employee.

62.     San Francisco failed to provide reasonable alternative means of accommodating the religious belief or observance that was in conflict with the COVID-19 vaccination work requirement.

63.     There is a dispute between the Plaintiffs and Defendant.  San Francisco asserts that it can undertake a detailed probe of the sincerity of the religious beliefs of its employees; this includes placing a burden on the Plaintiff Class to provide an objective basis for religious convictions regarding the refusal to take the COVID-19 vaccination.  Plaintiffs disagree.  Because faith is intrinsically subjective, a religious objector cannot be held to an objective measure of proof regarding what lay within his or her heart, mind, and soul.  Belief in what one may demonstrate to the senses is not faith.  Plaintiffs assert that Title VII presumes sincerity of belief by an

employee and therefore San Francisco's standardized practice of a rigorous inquisition is an unlawful standard. The Plaintiffs' legal position is that, although an employee's faith may be deemed as heresy to some and incomprehensible to others, employers cannot require orthodoxy of employees according to a recognized religion or demand that employees be put to the proof of their religious beliefs.

64.     There is a dispute between the Plaintiffs and Defendant. San Francisco universally asserts that every unvaccinated employee poses a threat to the health and safety of themselves, coworkers, and the public. San Francisco asserts that an accommodation for any religious adherent poses an undue hardship on San Francisco, which is more than a *de minimis* burden. Plaintiffs disagree. San Francisco has granted medical exemptions to some of its employees. The risks involving employees who receive medical exemptions to the COVID-19 vaccination stand as identical to the unvaccinated employees of faith. What is more, terminating unvaccinated religious employees does not place San Francisco in a safer position relative to the spread of COVID-19. Employees that have been fired have not been confined to their homes. They can move about freely within the City and County. Employees have not been sentenced to exile; while still within San Francisco, terminated employees ride public transportation, enter stores to purchase goods and services, conduct business in government offices, attend houses of worship, and are in the stands at sporting events. Therefore, any claimed hardship that keeping an employee on the payroll would incur is not substantially mitigated by firing the employee.

///

///

///

///

///

## SECOND CAUSE OF ACTION
### RELIGION CLAUSES
**First Amendment to the U.S. Constitution**
All Plaintiffs Against All Government Defendants
(42 U.S.C. § 1983)

65.     The Plaintiffs repeat and reallege the allegations above and incorporate those allegations herein by reference.

66.     The right to free exercise of religion is a right protected and guaranteed by the First Amendment of the U.S. Constitution. The liberties under the First Amendment apply to the states and their political subdivisions through the Fourteenth Amendment.

67.     The actions of San Francisco have been, and continue to be, done under color of law.

68.     The Plaintiffs have sincerely held religious beliefs that compel them to refuse the COVID-19 vaccine.

69.     San Francisco's detailed probe into the beliefs of the Plaintiff Class exceeds sincerity by determining orthodoxy, verity of beliefs, and hypocrisy.

70.     The depth of San Francisco's inquiry into the faith of employees who request religious accommodations is structured such that employees are denied an accommodation because they are perceived by the government to not be as devout of a member of their religion as state actors believe the employee should be.  This occurs by HR evaluators determining the following:

(1) whether the employee is part of a recognized religion;
(2) whether the employee's beliefs are in line with the teachings of religious authorities;
(3) whether the religion holds a universal prohibition against vaccination; and
(4) whether the beliefs should be called into question as judged by the presence of (a) alleged inconsistencies or (b) "factual inaccuracies."

71.     San Francisco HR evaluators are taking on the role that the First Amendment reserves to ecclesiastical courts, not government officials.

72.     The protocol HR evaluators use imposes requirements that stand as hostile to the religious beliefs of the Plaintiff Class and acts in a manner that passes judgment upon, or presupposes the illegitimacy of, religious beliefs and practices. Therefore, the protocol used is not neutral.

73.     The protocol HR evaluators use involves individualized assessments and thus are not neutral and generally applicable.

74.     San Francisco has engaged in indirect coercion and penalties on the Plaintiff Class for the exercise of their religion.  In doing so, San Francisco is excluding religious observers from continued employment.

75.     The vaccination requirement forces the Plaintiff Class to choose between receiving the COVID-19 vaccine in violation of their sincerely held religious beliefs or being fired, thus imposing a substantial burden on the Plaintiffs and the Plaintiff Class and interfering with, and depriving them of, the enjoyment of the religious liberties guaranteed by the First Amendment to the U.S. Constitution, as made applicable to the states through the Fourteenth Amendment.

### THIRD CAUSE OF ACTION
**FAILURE TO PROVIDE RELIGIOUS ACCOMMODATION**
**Violation of the California Fair Employment and Housing Act**
All Plaintiffs Against All Government Defendants
(Gov. Code § 12900 et seq.)

76.     The Plaintiffs repeat and reallege the allegations above and incorporate those allegations herein by reference.

77.     At all times relevant hereto, FEHA was in full force and effect and was binding on San Francisco.

78.     San Francisco failed to provide reasonable alternative means of accommodating the religious belief or observance that conflicted with the work requirement, i.e., COVID-19 vaccination.

79.     There is a dispute between the Plaintiffs and Defendant. San Francisco universally asserts that every unvaccinated employee poses a threat to the health and safety of themselves, coworkers, and the public. San Francisco asserts that an accommodation for any unvaccinated religious adherent imposes an undue burden on San Francisco. Plaintiffs disagree. Plaintiffs assert that accommodating the Plaintiffs does not pose a *significant difficulty or expense* on San Francisco per Gov. Code § 12926(u).

80.     Plaintiffs are entitled to further relief as more fully set forth below in their Prayer for Relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that the Court enter judgment in their favor, and against the Defendant, for full relief, including the following:

a.      Declaratory judgment that San Francisco's protocol for determining sincerity of faith in whole, or in part, on its face, and as applied, does not comport with the requirements of Title VII;

b.      Declaratory judgment that San Francisco's protocol for determining sincerity of faith in whole, or in part, on its face, and as applied, does not comport with the requirements of FEHA;

c.      Declaratory judgment that San Francisco's protocol for determining sincerity of faith is in whole, or in part, on its face, and as applied, is violative of the religion clauses of the First Amendment;

d.      Declaratory judgment that San Francisco's universal declaration that each and every unvaccinated-religious-objector-employee poses a danger to the

employee, co-workers, and thus accommodation poses an undue hardship on San Francisco, fails the reasonableness requirement under Title VII;

e.      Declaratory judgment that San Francisco's universal declaration that each and every unvaccinated-religious-objector-employee poses a danger to the employee, co-workers, and thus accommodation poses an undue hardship on San Francisco, fails the reasonableness requirement under FEHA;

f.      Declaratory judgment that providing a religious accommodation does not impose an undue hardship on San Francisco under Title VII;

g.      Declaratory judgment that providing a religious accommodation does not impose an undue hardship on San Francisco under FEHA;

h.      Preliminary and permanent injunction prohibiting San Francisco's protocol for determining sincerity of faith;

i.      Equitable relief in the form of an order setting aside the denials for accommodation and that the Plaintiff Class receive *de novo* consideration of their accommodation requests;

j.      Preliminary and permanent injunction prohibiting San Francisco from deeming the Plaintiff Class as a danger to themselves, coworkers, and the public;

k.      An award for actual, consequential, and incidental financial losses, including, but not limited to lost back pay, front pay, benefits, and other compensation plus interest;

l.      An award of compensatory damages;

m.      Restoration of employee benefits, including, but not limited to, medical benefits, pensions, and insurance;

n.      Restore vacation days, comp hours, and lost time hours;

o.      Attorneys' fees and costs; and

p.      Any and all other appropriate relief to which the Plaintiffs may be entitled including all "appropriate relief" within the scope of F.R.C.P. 54(c).

1    Dated: July 26, 2022

2
                              /s/ Kevin T. Snider
3                             Kevin T. Snider
                              *Counsel of Record*
4                             Matthew B. McReynolds
5                             PACIFIC JUSTICE INSTITUTE
                              NORTHERN CALIFORNIA OFFICE
6                             P.O. Box 276600
7                             Sacramento, CA 95827
                              Tel.  (916) 857-6900
8                             Fax  (916) 857-6902
9                             Email: ksnider@pji.org

10
                              Emily C. Mimnaugh
11                            PACIFIC JUSTICE INSTITUTE
12                            NEVADA OFFICE
                              1580 Grand Point Way #33171
13                            Reno, NV 89533
                              Tel.  (916) 857-6900
14                            Fax  (916) 857-6902
15                            Email: emimnaugh@pji.org

16
                              Ronn Bisbee
17                            BISBEE LAW GROUP
18                            24040 Camino del Avion, Suite E-109
                              Monarch Beach, CA 92629
19                            Tel. (949) 481-9664
                              Email: info@bisbeelawgroup.com
20

21                            *Attorneys for Plaintiffs*

22

23

24

25

26

27

28
_____
                    COMPLAINT